UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LAURA CHRISTINE CHRISTIAN,

    Plaintiff,

v.                                                       Case No. 3:16-cv-690-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Plaintiff alleges she became disabled on January 6, 2012. (Tr. 18, 38, 265.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on September 25, 2014, at which Plaintiff was represented by an attorney. (Tr. 36-62.) The ALJ found Plaintiff not disabled from January 6, 2012 through October 20, 2014, the date of the decision.[2] (Tr. 18-29.)

In reaching the decision, the ALJ found that Plaintiff had "the following severe impairments: disorders of the spine; an affective mood disorder; an

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15.)

[2] Plaintiff had to establish disability on or before December 31, 2013, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 18.)

anxiety-related disorder; headaches; and hypertension." (Tr. 20.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform "light or sedentary work" with additional restrictions. (Tr. 22.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from January 6, 2012 through October 20, 2014. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED.**

I. **Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937

F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises three issues on appeal. First, Plaintiff argues that although the ALJ gave significant weight to the opinions of the State agency non-examining physicians (Dr. Sunita Patel and Dr. Linda O'Neil), he failed to incorporate some of their limitations in the RFC assessment and failed to explain why he rejected these limitations. Second, Plaintiff argues that the ALJ erred in rejecting Dr. Atul Shah's treating opinions, while giving significant weight to Dr. O'Neil's non-examining opinions, in assessing Plaintiff's RFC. Finally, Plaintiff argues that the ALJ improperly relied on the testimony of the Vocational Expert ("VE") because it was based on an incomplete hypothetical question. Defendant responds that the ALJ properly evaluated the medical opinions of record, and his RFC assessment and hypothetical question to the VE are supported by substantial evidence.

### A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making

3

a disability determination. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, see *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he

opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curium). *See also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam). *See also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

### B. The ALJ's Decision

The ALJ found that Plaintiff had the RFC to perform "light or sedentary work" with the following additional restrictions:

> [T]he claimant can occasionally bend, crouch, stoop, and kneel. The claimant cannot squat or crawl, and must avoid the pushing and pulling of arm controls, overhead reaching, or the repetitive twisting

5

of her neck. The claimant must avoid ladders, unprotected heights
and the operation of heavy, moving machinery. The claimant is
limited to simple tasks in a low-stress work environment with no
production line that does not require public contact.

(Tr. 22.)

In making this finding, the ALJ gave "significant weight" to the non-examining opinions of Dr. Patel and Dr. O'Neil. (Tr. 24.) The ALJ explained:

In August 2012, Dr. Patel reviewed the record and concluded that
the claimant is able to perform a reduced range of light exertional
work (Exhibit C7A). Given recent treatment entries and diagnostic
images that are discussed below, the undersigned accords
significant weight to this assessment. However, given the claimant's
ongoing neck complaints, the undersigned has limited her to work
that does not require repetitive twisting of her neck. The
undersigned has also concluded that the claimant can only
occasionally kneel, cannot squat or crawl, and must avoid the
pushing and pulling of arm controls, and overhead reaching.
However, as will be outlined below, the record supports the
conclusion that she is not further limited.

In December 2012, Dr. O'Neil reviewed the record and concluded
that the claimant could understand and remember at least simple
instructions, and sustain concentration to perform a variety of tasks
at a non-rapid pace. Dr. O'Neil also concluded that the claimant
could relate adequately to supervisors and co-workers, but would
have trouble with the public (Exhibit C7A). The undersigned has
accorded this assessment significant weight because recent
treatment records document the claimant responded well to
treatment. Consequently, the assessment limits the claimant [to]
simple tasks in a low-stress work environment with no production line
that does not require public contact.

(*Id.*)

The ALJ also addressed Dr. Shah's opinions as follows:

The undersigned notes Dr. Shah's assessment (Exhibit C13F). The

6

> undersigned notes that if a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. . . . However, Dr. Shah's marked and extreme limitations are not consistent with the treatment record or the claimant's daily living activities.
>
> Given this, when a treating physician's opinion does not warrant controlling weight, the ALJ must weigh the opinion based on additional factors. Amongst those are the length of the treatment relationship and frequency of examination, the medical evidence supporting the opinion, consistency with the record as a whole, and other factors that tend to support or contradict the opinion. . . . The undersigned concludes that the 2014 and 2013 entries cited above support the conclusion that the claimant is not as limited as Dr. Shah concluded.

(Tr. 26.)

The 2014 and 2013 entries that the ALJ cited include: a January 2014 entry describing Plaintiff "as coping reasonably well despite ongoing stress related to her divorce and insurance issues, as well as the passing of her brother in 2013 (Exhibit C21F, page 3)"; a November 2013 entry noting that Plaintiff "was sleeping better on Klonopin, and was happy with her recent weight loss (Exhibit C21F, page 4)"; a September 2013 entry describing Plaintiff's condition as stable (Exhibit C21F, page 6); an April 2013 entry noting concentration issues, but no cognitive decline, adequate insight, and intact judgment (Exhibit C21F, page 9); and a January 2013 entry describing Plaintiff as cooperative and well groomed (Exhibit C18F, page 5). (Tr. 25.) The ALJ concluded that "[t]hese findings suggest that the claimant could perform simple tasks in a low-stress environment

7

despite her moderate limitations." (*Id.*)

The ALJ later noted that the entry from July 2013 described Plaintiff "as increasingly paranoid, withdrawn and apathetic (Exhibit C21F, page 8)," but concluded that "the assessment was of an adjustment reaction in response to her brother's suicide." (Tr. 26.) The ALJ stated: "Given the entries since that date, the record supports the conclusion that the claimant has recovered from that tragic event and is not as impaired as the findings in that entry imply." (*Id.*)

### C. Analysis

The Court agrees with Plaintiff that the ALJ erred in rejecting Dr. Shah's treating opinions, while giving significant weight to the State agency non-examining opinions, in assessing the RFC. The ALJ rejected "Dr. Shah's marked and extreme limitations" as inconsistent with the treatment record, particularly the progress notes from January, April, September, and November of 2013, and January of 2014, as well as Plaintiff's activities of daily living.

On April 5, 2012, Dr. Shah completed a Mental Capacity Assessment imposing a number of extreme, marked, and moderate limitations on Plaintiff. (Tr. 583-85.) Dr. Shah opined that Plaintiff had an extreme limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and that she would likely be absent from work four or more days per month. (Tr. 584.) Dr. Shah also opined that Plaintiff had a marked limitation in the following areas: ability to carry out very short and simple

8

instructions as well as detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or in proximity to others without being distracted by them; ability to make simple work-related decisions; and ability to set realistic goals or make plans independently of others. (Tr. 583-85.) In all other areas, Dr. Shah concluded that Plaintiff was moderately limited. (*Id.*) In support of this assessment, Dr. Shah cited Plaintiff's depression, anxiety, paranoia (including seeing shadows of people), poor word retrieval, decreased short-term memory, and failure to respond to many medications. (*Id.*)

Contrary to the ALJ's statement, Dr. Shah's limitations are not inconsistent with the treatment record, including the progress notes from January, April, September, and November of 2013, and January of 2014, or with Plaintiff's daily activities. The January 2, 2013 note from Family Practice Associates of Jacksonville, which the ALJ cited, indicates that Plaintiff presented to Dr. Michael A. Day for medication refill and was prescribed Ambien for her insomnia.[3] (Tr. 690.) The April 15, 2013 note from Dr. Shah, which the ALJ cited, indicates not only impaired concentration, but also restricted affect, exacerbation of anxiety,

---

[3] The record consistently shows that Plaintiff was not sleeping well. (*See, e.g.*, Tr. 630, 632, 747, 785, 788, 872, 875.)

9

increased mood swings with racing thoughts, paranoia about strangers, and complaints of insomnia. (Tr. 747, 789.) The September 16, 2013 note from the Monrose Clinic, which the ALJ cited, indicates that Plaintiff was "stable by [and] large," but her mood was dysphoric and she was advised to continue taking her medications. (Tr. 786.) The November 20, 2013 note from Dr. Shah, which the ALJ cited, indicates that Plaintiff was "[s]leeping better with Klonopin than Valium," was happy about her weight loss, but was depressed, withdrawn, and emotional. (Tr. 784.) This note also reflects that Plaintiff lost her insurance when her husband left her, which is only one of several records pointing to Plaintiff's lack of insurance and/or difficulty paying for treatment. (*See, e.g.*, Tr. 563, 685, 783-85, 788, 868; see also Tr. 51-52.) The January 20, 2014 note from Dr. Shah, which the ALJ cited, indicated that Plaintiff's mood was anxious and depressed, she was still paranoid going to the stores or out, she was coping well with her brother's death the previous year, and there was no issue with compliance. (Tr. 783.)

Interestingly, while the ALJ cited the progress notes from September and November of 2013, he did not mention Dr. Shah's note from October 15, 2013, which showed that Plaintiff's sleep was affected and Valium was not helping; her mood was "rather despondent"; her affect was down; she felt "morbidly hopeless" with "[n]o drive to do anything"; she was "[p]aranoid about going in stores"; she had problems with short-term memory; and she forgot even what "legal aid" was

10

called when asked by the doctor. (Tr. 785.) Plaintiff was diagnosed with severe depressive relapse with psychotic symptoms and anxiety, was "[i]ndecisive about seeking intensive [treatment]," and could not "judge on her own about her need to check into [a hospital]." (*Id.*)

Further, although the ALJ noted an entry from July 15, 2013 from the Monrose Clinic,[4] which described Plaintiff as increasingly paranoid, withdrawn, and apathetic,[5] the ALJ concluded that this was only an adjustment reaction to her brother's recent suicide and that Plaintiff had recovered from that event and was not as impaired. (Tr. 26.) However, in addition to being diagnosed with an adjustment reaction and unresolving grief that day, Plaintiff was also diagnosed with bipolar, severe depression with psychotic symptoms. (Tr. 788.) While the ALJ seems to portray Plaintiff's condition as a short-term reaction to her brother's suicide and/or her divorce, the record indicates otherwise. (*See, e.g.*, Tr. 563-64, 627-31, 747-49, 783-89, 875, 877.) Further, even when Plaintiff lost her health

---

[4] There was an additional entry from the same clinic from July of 2013. (*See* Tr. 787.) On July 29, 2013, a note from Rita Carr, a licensed mental health counselor, indicated that it was difficult to engage Plaintiff verbally, she had limited strategies for self-care and multiple losses that had not been resolved, her affect was tearful on occasion and overly controlled, she appeared physically tense, and she was encouraged to listen to music to distract herself. (*Id.*)

[5] In the same note, Dr. Shah also noted that Plaintiff was barely sleeping, her appetite and weight were down, her depression was "pretty bad," her affect was labile, she was not going to stores, her attention span was a problem, she was morbidly preoccupied and mad at her brother for killing himself and at her husband for abandoning her, and she was somewhat tangential and preoccupied with poor attention span. (Tr. 788.)

insurance as a result of her divorce or was otherwise unable to afford treatment, she continued pursuing medical treatment for her mental and physical impairments. (*See* Tr. 51-52.) In sum, after a thorough review of the record, the undersigned finds that substantial evidence does not support the ALJ's statement that treatment records from 2013 and 2014 showed that Plaintiff was not as limited as Dr. Shah opined.[6]

In rejecting Dr. Shah's opinions, the ALJ also pointed to Plaintiff's daily activities. However, as the ALJ's decision reflects, Plaintiff's daily activities were rather limited. (*See* Tr. 23 ("The claimant testified that she is reliant on her family to perform household chores, do most of the laundry, wash dishes, vacuum, sweep, and perform other chores. The claimant testified that she is able to prepare light meals. The claimant testified that she is able to dress and bathe herself."); *see also* Tr. 44-49.) The performance of such limited daily activities is not necessarily inconsistent with allegations of disability. *See, e.g.*, *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (per curiam) (reversing and remanding the case to the Commissioner for lack of substantial evidence to

---

[6] Of note, Dr. Shah was not the only treating provider to conclude that Plaintiff had extreme, marked, and moderate limitations due to her mental condition. (*See* Tr. 870-72.) Dr. O'Neil, a non-examining consultant, also opined in her Mental RFC Assessment that Plaintiff had marked and moderate limitations due to mental impairments. (*See* Tr. 134-35.) In addition, Dr. Day also opined back in October of 2010 that Plaintiff was incapable of even low stress jobs, that her depression and anxiety affected her physical condition, and that pain or other symptoms were severe enough to constantly interfere with her attention and concentration needed to perform even simple work tasks. (Tr. 448.)

support the finding that the claimant had no severe impairment, even though the claimant testified that she performed housework for herself and her husband, accomplished other light duties in the home, and "was able to read, watch television, embroider, attend church, and drive an automobile short distances"); *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 (N.D. Ala. 2004) (holding that substantial evidence did not support the decision denying disability benefits, even though the claimant reported that she took care of her own personal hygiene, cooked, did housework with breaks, helped her daughter with homework, visited her mother, socialized with friends sometimes, and, on a good day, drove her husband to and from work, but needed help with grocery shopping, and could sit, stand, or walk for short periods of time).

Based on the foregoing, the ALJ's evaluation of Dr. Shah's opinions is not supported by good cause and substantial evidence. Therefore, this case will be reversed and remanded with instructions to the ALJ to reconsider Dr. Shah's opinions, explain what weight they are being accorded, and the reasons therefor. If the ALJ rejects any portion of Dr. Shah's opinions, the ALJ must explain his reasons for doing so. In light of this conclusion and the possible change in the RFC assessment, the Court finds it unnecessary to address Plaintiff's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913

13

F.2d 882, 884 (11th Cir. 1990) (per curiam). However, on remand, the ALJ shall re-consider the medical opinions of record, including those of Dr. Patel and Dr. O'Neil, explain what weight they are being accorded, and why, and conduct any further proceedings deemed appropriate.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) reconsider the medical opinions of record, including the opinions of Dr. Shah, Dr. Patel, and Dr. O'Neil, explain what weight they are being accorded, and the reasons therefor; (b) reconsider the RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on September 13, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record